UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS R. GARREN,

       Plaintiff,                        Civil Action No. 11-14650

       v.                              District Judge Gerald E. Rosen
                                        Magistrate Judge Laurie J. Michelson

PRISONER HEALTH
SERVICES, et al.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S EMERGENCY
CONSIDERATION MOTION TO TRANSFER PLAINTIFF OR ORDER
TREATMENT AND EXAMINATION AT HOSPITAL (DKT. 17)**

      While incarcerated at the Charles Egeler Reception and Guidance Center ("RGC"), Plaintiff Douglas R. Garren brought this prisoner civil rights case on October 21, 2011 alleging that Defendants Prisoner Health Services ("PHS") and RGC doctor Crystal Jones, M.D., and nurse Dorehe Smith, R.N., violated his Eighth Amendment rights by denying adequate medical care to treat his chronic back/spine/neck pain. (Dkt. 1, Compl. at 5.) Plaintiff was subsequently transferred to the G. Robert Cotton facility ("JCF") in early November 2011 and then the Jackson Cooper Street Correctional Facility ("JCS") in early December 2011. (Dkts. 5, 12, Change of Address Notices.) He then filed an Amended Complaint on December 15, 2011 seeking to add personnel from those facilities, claiming that they too deprived him of necessary medical treatment for his pain. (Dkt. 14, Am. Compl.) Shortly thereafter, on December 23, 2011, Plaintiff filed the present emergency motion for a "temporary order" transferring him to another facility where his pain can be attended

1

to and/or directing an examination by an outside hospital. (Dkt. 16.) The Court will treat this as a Motion for Temporary Restraining Order ("TRO"). Because the newly added defendants have not yet been served with the Amended Complaint, no responses have been filed. All pretrial proceedings have been referred to this Court. (Dkt. 11.) For the reasons set forth below, this Court finds that Plaintiff has failed to establish a substantial likelihood of success on the merits, that he will suffer irreparable harm if the requested relief is not granted, or that the balance of harms favors the grant of injunctive relief, and therefore **RECOMMENDS** that the Plaintiff's Emergency Motion for Temporary Order be **DENIED**.

## I.  BACKGROUND

### A.  Facts

Plaintiff Douglas R. Garren ("Plaintiff") alleges that he has numerous medical ailments that cause him extreme pain, most of which pertain to his back and spine – including degenerative disc disease. (Dkt. 1., Compl. at 3.) Plaintiff claims that while he was incarcerated at RGC, Dr. Crystal Jones refused to order the proper pain medication for him.[1] (*Id.*) He further alleges that after being transferred to JCF and then JCS, numerous additional doctors and a health unit manager also refused to provide proper care or treatment for his chronic pain. (Dkt. 14, Am. Compl. at 4.) According to Plaintiff, they refused to continue the pain medications he has been on for years because of budget cuts. (*Id.*)

With respect to JCS, Plaintiff claims that the healthcare staff refuses to treat him altogether because he filed this lawsuit against several of their doctors and a health unit manager. (Dkt. 16,

---

[1] Plaintiff's only claim against Nurse Smith – including in the Amended Complaint – is that she denied an administrative grievance that he filed. Smith has filed a motion to dismiss. (Dkt. 16.)

Pl. Mot. Emergency Order at 2.)  He also claims that they took away certain of his medical supplies – including his TENS Unit and wheelchair. (*Id.*) This is the basis for Plaintiff's emergency motion to be transferred to another facility outside of Jackson, Michigan and/or to be treated at a hospital.

### B. Procedural History

Plaintiff brought this prisoner civil rights case *pro se* and *in forma pauperis* on October 21, 2011 in the Western District of Michigan. (Compl. at 1.)  It was immediately transferred to this Court. (Dkt. 3.) In the Transfer Order, the court indicated that "the events giving rise to Plaintiff's action occurred at RGC . . . ." (*Id.*) Following Plaintiff's subsequent transfers to JFC and JCS he filed an Amended Complaint on December 15, 2011 to add events occurring at these facilities. (Dkt. 14.) In his Motion for TRO, Plaintiff claims that he served the JCS Defendants but there is nothing on the docket indicating such service.  Indeed, only Nurse Smith (from RGC) has appeared and she has filed a motion to dismiss. (Dkts. 13, 16).  None of the Defendants responded to Plaintiff's Motion for TRO.

## II. ANALYSIS

### A. Standard of Review

In determining whether to issue a TRO or preliminary injunction, a court must balance the following factors:

> (1) Whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; or (4) whether the public interest would be served by issuance of the injunction.

*Rock & Roll Hall of Fame Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).  The factors are not prerequisites, but are factors that are to be balanced against each other. *United Food*

*& Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998) (citation omitted). Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Layette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *Winter v. Natural Res. Def. Council*, 505 U.S. 7, 129 S. Ct. 365, 376 (2008). Additionally, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Learly v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Lastly, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland,* 740 F.2d 432 at 438, n.3 (6th Cir. 1984).

The application of these factors supports the denial of Plaintiff's Motion.

### B.     Legal Standards Regarding Plaintiff's Eighth Amendment Claim

Plaintiff alleges that Defendants' approach to his medical treatment constitutes cruel and unusual punishment under the Eighth Amendment. To prevail on this Eighth Amendment claim, Plaintiff must show that Defendants acted with "deliberate indifference to his serious medical needs." *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir. 2003) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference is a "reckless disregard of a substantial risk of serious harm." *Rumsey v. Michigan Dept. of Corrections*, 327 F. Supp. 2d 767, 777 (E.D. Mich. 2004). "Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation." *Bowman*, 350 F.3d at 544. The inquiry into whether a prison official acted

with deliberate indifference has both an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In order to satisfy the objective component, the prisoner must show that the medical need is "sufficiently serious." *Id*. at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the subjective component, the prisoner must allege facts which show that the prison official had a "sufficiently culpable state of mind." *Farmer* 511 U.S. at 834; *Comstock*, 273 F.3d at 703. It must be shown that the official acted with reckless disregard for a substantial risk to the prisoner, that he drew the inference, and that he disregarded the risk. *Farmer*, 511 U.S. at 836-37

### C. Analysis of the Preliminary Injunction Factors

Plaintiff's TRO Motion focuses solely on the treatment – or lack thereof – by the JCS Defendants. As mentioned, Plaintiff contends that "no healthcare staff will see him" and they have taken away his medical supplies.[2] (Pl. Mot. TRO at 2.) Plaintiff has not shown a likelihood of success on the merits.

First, it does not appear that Plaintiff has – or could have – exhausted his administrative remedies with respect to the actions of the JCS Defendants. Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, prisoners seeking to bring § 1983 actions with respect to prison conditions must first exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007). To satisfy this exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S.

---

[2] Plaintiff alleges this solely as an Eighth Amendment claim and does not allege a First Amendment claims. (Am. Compl. at 4.)

at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The PLRA requires "proper exhaustion," meaning that plaintiffs must timely pursue available administrative remedies. *Woodford*, 548 U.S. at 93. Failure to file an administrative grievance within proper time limits precludes proper exhaustion and thus bars the claim in federal court. *Id.* The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences," whether for broad prison conditions suits or for individual allegations of abuse. *Porter v. Nussle*, 534 U.S. 516, 520 (2002).

While Plaintiff's Complaint and Amended Complaint attach numerous pages of medical kites, grievances and grievance responses, the vast majority pertain to his medical treatment at RGC and JCF. (Dkts. 1, 14.) The Court has only identified a few pages that pertain to JCS. There are health care requests on December 9 and 10 inquiring about pain medication and a doctor visit. The responses indicate that Plaintiff had a "call out" to be seen on December 16, 2011. (Dkt. 14, Atts. at pp. 54-56). It appears from Plaintiff's current motion that he filed a grievance in mid-December (date is illegible) when he was only seen by an R.N. and not a doctor – as well as a grievance for not being adequately treated and not yet receiving a TENS unit at JCS. (Pl. Mot. TRO at 23, 24).[3] There is nothing that suggests Plaintiff exhausted any grievances for the alleged failure of the JCS Defendants to treat him or their removal of his medical supplies. Plaintiff was only recently transferred to JCS. He filed a notice of change of address on December 9, 2011. He filed grievances only a few days later. He filed the present Motion on December 23, 2011. He could not have completed the grievance process in this short amount of time. *See* MDOC Policy Directive

---

[3] There is nothing else in the current record pertaining to the latter two Step I grievance forms. Additionally, the grievance forms do not support Plaintiff's contention that he is receiving no treatment at JCS. Instead, his complaints are similar to those at the prior facilities – that the pain medication he is being given (e.g., Tylenol, Naproxen, Trazadone) is not adequate. (Pl. Mot. TRO at 24.)

03.02.130. Indeed, the First Step Grievance Receipt form from JCS indicates their response is not due until January 4, 2012 (*id.* at 28) – well after the filing of the amended complaint and pending motion. Because the timing and substance of Plaintiff's request for TRO make clear that he has failed to exhaust his administrative remedies with respect to his allegations against the JCS Defendants, he is unlikely to succeed on the merits of those claims. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); *see also Rhinehart v. Scutt*, No. 10-10006, 2011 WL 679699, at *4 (E.D. Mich. Jan. 14, 2011) *report adopted by* 2011 WL 674736 (E.D. Mich. Feb. 16, 2011) (finding a pair of grievances unexhausted despite that the first was appealed through Step III and the second terminated favorably at Step II because "plaintiff's Step II and Step III appeals on the first grievance, and the filing of the second grievance, all occurred after he filed his complaint in this action.")

Additionally, the grievance and treatment materials that Plaintiff attached to his pleadings do not demonstrate that he has been receiving inadequate medical care. The records reflect that the administration of pain medication was based on the judgment of the various medical providers ("MP") and Resident Medical Officer ("RMO") as well as the directives of the MDOC Pain Management Committee ("PMC"). (*See, e.g.,* Dkt. 14, Am. Compl. Atts. at pp. 25, 33, 41, 78). Plaintiff's desire for different or stronger medications does not show that Defendants' medical care constitutes a "reckless disregard for a substantial risk of human harm." *Rumsey*, 327 F. Supp. 2d at 777; *see also Greenman v. PHS*, No. 10-549, 2011 U.S. Dist. LEXIS 141062, *30-31 (W.D. Mich. Dec. 8, 2011) (granting summary judgment where "the record shows that defendant treated

plaintiff's condition on an ongoing basis with appropriate medications. Plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by [defendant] falls far short of supporting an Eighth Amendment claim."); *Almond v. Pollard*, No. 11-1555, 2011 U.S. App. LEXIS 19199, 2011 WL 4101460, at *3 (7th Cir. Sept. 15, 2011) (affirming summary judgment in a case involving a prisoner's complaints about the treatment of his back pain, explaining that the prisoner "may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference." (citing *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011))). Moreover, as Plaintiff was only recently transferred to JCS, it is unclear whether his inability to see a doctor yet is the result of deliberate indifference or simply a function of timing and establishing a treatment plan for a new resident. Nor does Plaintiff allege facts which show that the JCS Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Moreover, even if Plaintiff is able to show a disputed issue of fact as to whether his pain management is appropriate, such a showing does not warrant equitable relief. *Leary*, 228 F.3d at 739. This Court is ill-equipped to micro-manage medical treatment. *See Westlake v. Lucas,* 537 F.2d 857, 860, n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"); *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003) ("[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill equipped").

Given the Plaintiff's lack of likelihood of success on the merits, it is not necessary to discuss the other injunction factors in great detail. *Gonzales v. National Bd. of Med. Exam'rs,* 225 F.3d

620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.")

Regarding irreparable harm, because it appears unlikely, on the current record, that Plaintiff will be able to demonstrate that he has a cognizable constitutional claim, he is not entitled to a presumption of irreparable harm based on the alleged constitutional violation. *See, e.g.,* Overstreet 305 F.3d at 578. As to the remaining factors, whether issuance of the injunction would cause substantial harm to others and whether the public interest would be served by issuance of the injunction, in another prisoner civil rights case involving a request for preliminary injunction, a federal court in this Circuit aptly explained:

> in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

*Brim v. Galloway*, No. 2:10-cv-64, 2011 U.S. Dist. LEXIS 30072 (W.D. Mich. Jan. 20, 2011). Additionally, issuance of the requested order would have an unduly adverse affect on the ability of correctional medical personnel to exercise their professional judgment in determining the appropriate course of treatment for inmates.[4]

---

[4] The courts are also reluctant to get involved in decisions involving prisoner placement. For instance, in *Miller v. Garner*, No. 699-83, 1999 U.S. Dist. LEXIS 23402 (S.D. Ga., June 2, 1999), the court denied an inmate's motion for a preliminary injunction seeking a transfer to another prison and explained:

> Furthermore, Plaintiff's request for the Court to order Defendants to transfer him to a medical prison is not an appropriate request because an inmate does not have a constitutional right to placement in any

9

Plaintiff's request for a prison transfer and an order for specific medical care is, in effect, seeking relief as if he has already prevailed on the merits and demonstrated inadequate care. But the purpose of a preliminary injunction is to maintain the relative positions of the parties *until* proceedings on the merits can be conducted. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court **RECOMMENDS** that the Plaintiff's Motion for Temporary Restraining Order (Dkt. 17) be **DENIED**.

### IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States*

---

particular prison. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 2538, 49 L. Ed. 2d 451 (1976). The Supreme Court has stated that "[t]he federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States." *Meachum*, 427 U.S. at 229, 96 S. Ct. at 2540, 49 L. Ed. 2d 451 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491-492, 93 S. Ct. 1827, 1837, 36 L. Ed. 2d 439 (1973)). It is not within the Court's discretion to micro-manage the prison system and force a transfer of an inmate from one facility to another. Thus, the Court cannot order the transfer of Plaintiff to another institution.

*Id*. at *5-6; *see also Smith v. Jones,* No. 08-661, 2009 U.S. Dist. LEXIS 128606 (W.D. Mich., Apr. 27, 2009) ("A prisoner has no constitutional right to incarceration in any particular prison") (citing *Olim v. Wakinekona,* 461 U.S. 238, 245(1983)).

10

*v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

        s/Laurie J. Michelson
        LAURIE J. MICHELSON
        UNITED STATES MAGISTRATE JUDGE

Dated: January 4, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 4, 2012.

        s/J. Johnson
        Deputy Clerk